Good morning, Your Honors. May it please the Court. My name is Bernadette Willeke Connolly, and I'm representing the petitioner in this case. This is a case regarding ineffective assistance of counsel, which unfortunately is not that uncommon in immigration proceedings. Excuse me. Could you pull the mic closer to your – Yes. Is that better? That's better. Okay. Which is unfortunately not uncommon in immigration proceedings. And this Court has mentioned several times in many decisions that there is a problem with representation in the immigration bar. In this case, the attorney handling proceedings below was ineffective because he did not present evidence and also he did not advise the petitioner that she had other avenues of relief available. Ms. Connolly, may I – may I hone in on one thing? Yes. Whether or not prior counsel was ineffective, there has to be diligence. Yes. Yes. The BIA found that there – that diligence was lacking. And here's my proposition to you so that you can respond. That finding is supported by substantial evidence in the form of Roldan's declaration in support of the Lozada complaint, where she said that she realized what a poor job her prior counsel had done after meeting with you and another attorney, which occurred no later than October 17th, and that she knew at that point that her case should have been joined with her mother's. And she knew at that point that a motion to reopen, based upon her mother's successful application to adjust status, should have been brought. Yes. Knowing – knowing all those things, then why was the BIA compelled to find that there was diligence? Well, Your Honor, to address that briefly, in order to bring an ineffective assistance claim, of course, as the attorney bringing that claim, you have to exercise due diligence. That is correct. But what we did was we requested several times for over several months that the prior counsel turn over the file. I understand that. But I'm focusing on what your client swore that she knew as of the time that she consulted with you, which was 10 months before a motion to reopen was filed. Yes, Your Honor. She knew without reference to the file. I mean, the file isn't going to help with respect to her mother's case. So she says she knew that her – she should have been joined with her mother's case and wasn't. Well, Your Honor, but what we had to prove is that was what we assumed after we had consulted with the client. But we also had to see what the attorney actually advised her. And that you can only see in the file because, you know, I can say you need to get – Well, she knows what she was advised. She may not know what is note show, but she knows what she was told. Well, but there was also – she stated in her declaration that at one point she met with the attorney and her mother and she didn't understand exactly what he explained to her. And, you know, a petitioner is a layperson who may not have understood that the attorney advised her to do a motion to reopen. When you go and file an ineffective assistance claim, that impugns an attorney. And you have to be very careful what you do because, number one, it has very bad implications for the attorney against you complain about, and you also risk your own professional reputation. The board seemed to feel that you had not moved fast enough after you – that initial encounter with your client. That is correct, Your Honor. And there is actually an unpublished case here by the Ninth Circuit that I can briefly cite to where there was a similar situation. In that case, the attorney actually had the file for seven months and did not file after he had the file for seven months. And still this Court found that there was due diligence exercise. As soon as we had the file and we could review what the attorney knew and what the attorney – what the correspondence was, we within 90 days filed our complaint. So I don't see that we did not exercise due diligence. I think it is – I think it's further evidence of the prior attorney's ineffectiveness that he did not comply with the State bar rules that require that upon request, the file needs to be turned over and you cannot condition, for example, turn over copies upon – that the respondent or the client pays for copies. My understanding is that when you got involved, the prior attorney was still involved or a counsel of record on a pending appeal from the original decision? Yes, Your Honor. And I have to say something about that. Well, don't say something yet until I ask my question, which is so your client asked him to turn over his file, but at that point he was still representing her. And didn't he – did he not say that if she would pay for copying the file, he would provide the file for that purpose or that it could be read in his office? Yes, but he never did. We contacted him many times.  He said he would pay for the copies, but he never said he would pay for the copies and try to obtain a copy. And it was – I thought in her declaration she said she couldn't afford $300. That was initially. And, you know, and again, under the State bar rules, an attorney cannot condition to turn over in California, cannot condition to turn over the file on payment of the copies. He had to turn it over even though he was actively representing her? The portions of the – a copy, yes. You have to turn over a copy. At his expense. Yes. He can later on request reimbursement in litigation, but under the State bar. And I can actually cite to the decisions, if you like. There is an ethics opinion, 2001-1, and also there were ethics decision number 1997-1 and 1984-3. And I actually consulted with the State on that. So what I'm saying is I needed to review and see what the attorney actually did. I mean, a client can misunderstand. And I'm not going to put a colleague of mine, you know, in proceedings before the State bar, alleging something that maybe she did not understand he advised her. Now, all this information was before the board, though. That is correct, yes. And, you know, it really, really ticked me off, you know, that the attorney didn't turn over the file. And now I'm blamed for that I didn't move fast enough. I mean, what was I supposed to do, go into his office and threaten him? Okay. Do you want to save your time for everybody? Yes, please. Good morning, Your Honors. May it please the Court. Arthur Rabin on behalf of the Attorney General. Getting straight to the issue of whether or not the board abuses discretion in denying the motion to reopen. The facts in this case are these. That we know, based on the affidavit, that the client here knew, or at least should have known, that she was not being properly, or as she alleges, she was not getting proper service from her attorney. And that happened way back in October of 2007. Now, we know at the very least in October 2007 because that is when her new counsel, Ms. Connolly, sent a letter to her former attorney and said, please give us the file. When was that? I'm sorry, Your Honor? What was the date you just said? That was May 7th. I'm sorry. October 17th, 2007. Right. That was the date of the letter. Now, at this point. Just so I understand, she knew and actually consulted an attorney. So that was being diligent. That's when she actually went to an attorney and that's the date we for sure know she's retained another attorney and wants another attorney to represent her. Right. Okay. So there's no doubt she's been diligent at that point. At that point. Right. Well, lo and behold, she does not file a motion to reopen until ten months later. Now, she does not. She claims that this delay was caused by the inability to obtain the attorney's file. So we've heard. But.  What do you say about her explanation? Well, because the things she alleges he did wrong, she knew and she could have put in her own affidavit, such as the things that she's now alleging, the lack of communication, lack of witness preparation with herself before the hearing, the lack of medical expert testimony not appearing, the lack of him assisting her to produce medical documents, the failure to consolidate her case with her mother's case. Let me ask you this, because it's a practical problem. The attorney is undisputably holding back the file. Yes. All right. And the counsel has cited state bar rule, which says ethics opinion, which says that it was inappropriate, unethical for him to require the payment of $300 fee to turn over a copy. So are you suggesting that under those circumstances, it would have been appropriate for the attorney to file a claim of ineffective assistance without knowing whether or not he had in fact made efforts to address the issues which the attorney now is charging him as being unprofessional? In other words, that he may have tried to do some of the things that the client or the layperson felt he hadn't done, and yet he has correspondence or the files show that he has actually attempted to do those things? Yes, Your Honor. That's because she could have spoken to her client and determined many of these allegations. She would have determined what the client's perception was. That's right. The client's often get we see prisoners who think that they're, you know, they had terrible counsel, and counsel come in on the evidentiary hearing and say, baloney, I've got all of this information. Now, I'm a little concerned by her argument, which is she's put in a position of filing a one-sided claim of ineffective assistance without knowing the information. Yes, Your Honor. Does that apply to all 11 concepts? You know, attorneys have an obligation to conduct an appropriate investigation before they file a claim. Do you think that does that bear on this case at all? Not really, Your Honor, because under the board's precedent, the matter of Lozada case, to raise this kind of allegation, she has to then send also a letter to the attorney making the allegations known and giving him the opportunity to respond as part of the process. Now, what she could have done was, based on her client's affidavit, file these allegations and then waited for the attorney to respond. And if these allegations would have been rebutted, she could have withdrawn it. Now, despite the fact that later she got to file from the attorney in May of 2008, she did not file her motion to reopen until almost 90 days even after that. But she did file within 90 days. Within 90 days, yes. It was within 90 days, but still, you know, there was a certain dilatory period there. Even though she had to file for almost 90 days, she still didn't file until that almost 90-day period was over. Mr. Reddin, one of the difficulties, it seems to me, is that the BIA simply found no diligence. There's no way to tell, looking at the BIA's disposition, whether it factored in anything about the files, whether it factored in any difficulty in getting them, or whether counsel should or shouldn't have substituted in on the Ninth Circuit sooner, any of those things. It just said lack of diligence. So do we have enough from the BIA in order to rule, or should we simply send it back and say, you know, we can't tell from what you said what your reasoning actually is? Yes, Your Honor. The Board did say that in the amount of time that had elapsed from the time the attorney was retained, Ms. Connell was retained to the time the motion was filed, it specifically said that there was a nine-month period, or I'm sorry, a ten-month period. Well, I know. I'm not sure whether that goes, I assume that that shows in the BIA's judgment lack of diligence. But I don't know for sure whether it's diligence finding, which preceded that discussion, has to do with post-October 17th conduct or pre-October 17th conduct or both. And it makes no reference, as I said, at all to the existence of files. So why isn't the better part of valor here simply to say, look, BIA, tell us what you meant. If you want deference to your finding, explain what you are finding. Yes, Your Honor. But, I mean, this is an abuse of discretion standard. So you can't do that. I understand. But for there to be discretion, you have to exercise it. Yes, Your Honor. As I said, I know they did in one conclusory word. But there's lots that we don't or we can't discern. Well, Your Honor, I mean, there's sufficient facts on the record, and the Board laid out sufficient analysis for the Court to decide whether or not it abused its discretion in finding. Well, let me be a little bit more – well, let me ask the same question a different way. I don't know precisely what significance this whole fact – the whole file being held hostage allegation has. I can see it coming out one way. I can see it coming out another way. But so far as I can tell, the BIA didn't focus on it at all. Now, was that within its discretion? We don't know if the Board considered or not. That's my point. Right. That's my point. So if you don't know, why not send it back and have the BIA say what it thinks? Because it is unnecessary. Here there are sufficient facts to support the Board's decision. The Board laid out its analysis and said 9 months is too long. Based on the fact that all these things that you're alleging now, your client knew. You don't need the file to raise such a motion. I mean, that is what the Board is saying to a practitioner in front of its bar. So for the Court now to go back to the Board and say, well, again, explain to us why it is not sufficient, I think is unnecessary. You've articulated a response today about invoking a matter of Lozada, and that would take care of the ethical issue about filing a claim, you say, filing a claim when all you have is the client's word as against the attorney's and that Lozada would be in the face of a recalcitrant attorney who won't turn over the file. The Board thinks that is the way to go. But that's you. I don't know that the Board feels that way, and I'm not sure that the Board would agree with that. And if it wouldn't, I think we're entitled to know that. Sure, Your Honor. But also another key factor here is that Ms. Colley never approached either the Board or DHS to obtain a copy of the record to determine what had been filed, what had been done in front of the IJ. She never made an attempt to go beyond just assisting or asking the attorney, the former attorney, whom obviously was being protective of his client also and, as his response indicates, felt that his client was being taken advantage of because he felt that he had done a very good job for his client and that he thought a counter-ethical allegation was even appropriate. So, you know, to say that the mere fact that this attorney sat there and just made numerous requests to obtain a client file and that should be sufficient diligence, I don't think is enough. I think it should be the fact that you don't. Right. No, I mean, you're glossing it. None of this is from the BIA.  You're defending what they say. Yes, Your Honor. Yeah. You may absolutely be right. Yes, Your Honor. Okay, fine. Subject to the Court's decision. Yeah. Thanks. Well, first, as to take advantage of the client, I don't think so because I have been representing her for bono. So I am not being paid for doing this. Okay. Okay. So I just wanted to say that. And I would be surprised if you got an answer any faster than you were getting the response. Yes, Your Honor. Thank you. Thank you, counsel. The case argued is submitted.
judges: Ripple, Rymer, Fisher